# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOANN JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:09-0551 |
| | ) Judge Echols |
| MIKE GANNON, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM

This is a civil rights action brought by Plaintiff as a result of her allegedly unlawful arrest and the search of her property in Cannon County, Tennessee. Named as Defendants are Mike Gannon ("Gannon"), the County Executive of Cannon County; Billy Nichols ("Nichols"), the Sheriff of Cannon County; Charlie Wilder ("Wilder") and Vance Walker ("Walker"), Deputy Sheriffs of Cannon County; and John Does, unknown employees of the Cannon County Sheriff's Department who allegedly are responsible for the customs, policies, procedures, and practices implemented by the Cannon County Sheriff's Department. Defendants have filed a Motion to Dismiss[1] (Docket Entry No. 16), to which Plaintiff has responded in opposition (Docket Entry No. 27) and Defendants have replied (Docket Entry No. 28).

---

[1] The Motion to Dismiss is directed at the First Amended Complaint. After the Motion was filed, Plaintiff again amended her complaint but the allegations remain substantially the same. Accordingly, the Court will consider the Motion to Dismiss as being directed at the allegations contained in the Second Amended Complaint. See, Mortgage Now, Inc. v. Stone, 2009 WL 4262877 at *1 n.2 (N.D. Fla. 2009)(while an amended complaint supercedes a prior complaint, "a motion to dismiss can apply to a subsequently-amended complaint when the amended allegations are substantially similar to those alleged in the earlier complaint"); Allen v. City of Galveston, 2007 WL 996628 at *3 (S.D. Tex. 2007)("[t]o the extent that defects raised in the Motion to Dismiss remain in the Amended Complaint, a court should simply apply the Motion to that pleading.").

1

# I. **FACTUAL BACKGROUND**

For present purposes, the Court accepts the facts from the Second Amended Complaint (Docket Entry No. 24) as true. Those factual allegations are as follows.

Plaintiff is the sole owner of a two-story house and ten-acre tract of land located at 4545 Big Hill Road in Liberty, Tennessee. The adjacent property, 4501 Big Hill Road, is owned by her ex-husband, Edward Johnson, and includes a house, a large shop building, a small storage shed, and thirteen acres of land. Plaintiff and Edward Johonson have been legally divorced since some time in 2002 and as a result of that divorce divided their real property, including the property located on Big Hill Road. The properties located at 4545 Big Hill Road and 4501 Big Hill Road have separate driveways and mailboxes.

On January 20, 2008, officers from the Cannon County Sheriff's Department were conducting a fugitive manhunt in middle Tennessee. One of the fugitives they were searching for was Jim Flesher ("Flesher"), who they knew through previous contacts had some connection with Plaintiff. In fact, Flesher had previously been employed by Plaintiff.

In their search for Flesher, officers went to 4545 Big Hill Road and searched both Plaintiff's residence and property and her ex-husband's property looking for Flesher. The search was purportedly with the consent of the Plaintiff, although Plaintiff claims that she informed Wilder that she and Edward Johnson had been divorced since 2002 and quitclaim deeds were signed which divided the properties between Plaintiff and her ex-husband. In fact, Plaintiff alleges in her Second Amended Complaint that she did not even have the right to be on Edward Johnson's property.

The search of Plaintiff's property revealed no evidence of illegal activity. However, during the search of Edward Johnson's property, officers allegedly came across marijuana in plain view

2

inside a shop building. Upon discovery of the marijuana, officers went to the courthouse and pulled the tax records which indicated that Plaintiff had no ownership interest in 4501 Big Hill Road. Nevertheless, officers returned to Big Hill Road and placed Plaintiff under arrest for possession with intent to sell marijuana, manufacturing marijuana, and maintaining a building for the purpose of manufacturing marijuana. Plaintiff was handcuffed and, while being escorted to a police car, was photographed by the local media. The charges were dismissed after a state court judge determined that there was no probable cause to arrest Plaintiff for the marijuana grow operation.

Based upon the foregoing events, Plaintiff filed suit in this Court setting forth five theories of recovery.[2] Plaintiff first asserts that Defendants are liable under 42 U.S.C. §§ 1983 & 1986 because, while acting under color of state law, Defendants deprived Plaintiff of her Fourth and Fourteenth Amendment rights by seizing her without sufficient legal cause. In her second cause of action, Plaintiff alleges that the Defendants, while acting under color of state law, conspired with each other to deprive her of her civil rights in violation of 42 U.S.C. § 1985. In her third cause of action, Plaintiff claims that the Defendants are liable for negligence under the Tennessee Governmental Tort Liability Act ("TGTLA"). Plaintiff's fourth cause of action seeks to hold Defendants liable under T.C.A. § 8-8-302 because the actions taken by Defendant were in their roles as Cannon County deputy sheriffs. Finally, Plaintiff alleges Defendants are liable under the common law theories of trespass to chattels and assault and battery.

---

[2]While the Second Amended Complaint purportedly sets forth six "causes of action," the Complaint skips from the "third cause of action" to the "fifth cause of action."

## II. STANDARD OF REVIEW

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

While the Court must accept as true all of the factual allegations contained in a complaint, the same does not hold true with respect to legal conclusions and, therefore, the complaint must include factual allegations to support the legal claims asserted. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## III. APPLICATION OF LAW

In their Motion to Dismiss, Defendants set forth arguments on nine different issues. Plaintiff concedes that some of her claims are not viable, including her Fourteenth Amendment claim (because it is subsumed by her more specific Fourth Amendment claim); her claims under 42 U.S.C. §§ 1985 and 1986 (because Plaintiff does not allege that a conspiracy was motivated by racial or other class-based animus); and her request for a permanent injunction. Those claims will be dismissed. The Court now turns to the remaining arguments raised by Defendants.

4

## A. Claims Against Detective Vance Walker

Defendants move to dismiss the claims against Detective Vance Walker because Plaintiff makes no allegations against that Defendant, other than to name him as a Defendant in the caption of the Amended Complaint. In response, Plaintiff argues that deficiency has been cured by the following allegations in the Second Amended Complaint:

> 3.5 Defendant Vance Walker is a Deputy Sheriff in Cannon County, Tennessee, and at all times relevant to this complaint was acting under color of law, and is sued in both his official and individual capacities for his failure to perform, neglect and deliberate indifference to his duties as a Deputy Sheriff and intentional acts committed upon the Plaintiff.

(Second Amended Complaint ¶ 3.5). Such allegations, standing alone, do not establish a "facial plausibility" of liability because in that paragraph Plaintiff fails "to plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" as required by Iqbal. However, that paragraph must be read in conjunction with the entire Second Amended Complaint, including the allegations contained in the "Facts" section wherein Plaintiff alleges, among other things, that officers of the Cannon County Sheriff's Department conducted a warrantless search of her property; that officers should have realized that Plaintiff and Edward Johnson were no longer married and did not have joint ownership in the properties on Big Hill Road; that officers illegally searched her property; and that officers unlawfully arrested and seized Plaintiff without probable cause. A fair inference to be drawn from the allegations is that Defendant Walker was among the officers who engaged in the allegedly unlawful activity about which Plaintiff complains. See, Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009)(Iqbal "did not change th[e] fundamental tenet of Rule 12(b)(6) practice" that all reasonable inferences must be

5

construed in plaintiff's favor). Therefore, the claims against Defendant Walker will not be dismissed at this juncture.

**B. <u>Municipal Liability Under Section 1983</u>**

Defendants Gannon and Nichols argue that because they are being sued solely in their official capacities as County Executive and Sheriff, respectively, the claims against them should be treated as claims against Cannon County itself. Those Defendants also argue that the allegations contained in Plaintiff's Amended Complaint fail to set forth a claim for municipal liability. While Plaintiff concedes that her official capacity claims against Defendants Gannon and Nichols are effectively claims for municipal liability under Section 1983, she argues that she should be allowed to proceed on a failure to train claim against Cannon County.

In <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S.658 (1978), the Supreme Court held that municipalities are "persons" within the meaning of section 1983, but also that a municipality could not be held liable under Section 1983 solely because it employed a tortfeasor. <u>Id</u>. at 692. Rather, to hold a municipality liable under Section 1983, a plaintiff must identify a municipal policy or custom that caused plaintiff injury. <u>Id</u>. at 694. Where a failure to train or supervise is the result of a municipality's policy or custom and results in a constitutional deprivation, a municipality can be held liable under Section 1983. <u>See</u>, <u>Jones v. City of Cincinnati</u>, 521 F.3d 555, 560-61 (6th Cir. 2008). Inadequacy of training may serve as the basis for § 1983 liability, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [governmental employee] come[s] into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 387 (1989).

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the

6

result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. Ellis v. Cleveland Muni. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006). "'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Currie v. Haywood County, 234 Fed. Appx. 369, 372-73 (6th Cir. 2007)(quoting, Perez v. Oakland County, 466 F.3d 416, 430-31 (6th Cir. 2006)).

In determining whether allegations of failure to train state a plausible claim for relief, the assertion of a legal conclusion about the involvement of supervisory personnel is insufficient because "[t]his is precisely the type of 'the-defendant-unlawfully-harmed-me allegation that the Supreme Court [in Iqbal] has determined should not be given credence when standing alone." Sanchez v. Pereira-Castillo, 2009 WL 4936397 (1st Cir. 2009). In this regard, "Plaintiff's use of phrases such as 'failure to train,' [and] 'failure to supervise' . . . is meaningless without any factual allegations." Mabien v. Riely, 2009 WL 4609763 at *3 (S.D. Ala. 2009). In other words, "[b]aldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right" and, in such circumstances, a failure to train claim against a city must be dismissed. Cuevas v. City of New York, 2009 WL 4773033 at *4 (S.D.N.Y. 2009).

In this case, Plaintiff's failure to train "allegations are heavy on descriptive language, [but] light on facts." Id. Plaintiff sues Gannon, the County Executive, and Nichols, the County Sheriff and, utilizing virtually identical language, asserts that those Defendants are being sued in their official capacity for their "failure to perform, neglect and deliberate indifference to [their] duties." (Second Amended Complaint ¶¶ 3.2 & 3.3). Plaintiff also alleges that Gannon "is responsible for

7

the customs, policies, procedures and practices implemented through the various agencies, departments and employees of Cannon County," including "the policy and practices used and the training received by the Cannon County Sheriff's Department when exercising their powers of arrest granted them by the laws of this state." (Id. ¶ 3.2). Identical allegations about customs, policies, and procedures are made against Nichols, with the sole difference being that Nichols was responsible for such customs, policies, and practices in his role as Sheriff of Cannon County. (Id. ¶ 3.2).

Conspicuously absent from the Second Amended Complaint, however, are any factual allegations that the constitutional violations in this case resulted from any identified custom, policy or practice, or any allegation about prior allegedly unconstitutional conduct which would place the county on notice that its training was deficient. The allegations contained in Plaintiff's Second Amended Complaint are simply nothing more than the "formulaic recitation of the elements" of a failure to train claim and are insufficient to survive a Motion to Dismiss after Iqbal. See, Diaz-Martinez v. Miami Dade County, 2009 WL 2970471 at *16 (S.D. Fla. 2009)("simply echo[ing] language" from cases about deliberate indifference is not sufficient to survive a motion to dismiss on failure to train claim because, without supporting factual allegations, the most that can be said is that the municipality chose to ignore unconstitutional conduct in the case *sub judice* which is insufficient to show a policy, custom, or practice); Stanley v. Landers, 2009 WL 3757389 at *1 (D.N.H. 2009)(conclusory assertion that police officer was not adequately trained is insufficient to survive a motion to dismiss after Iqbal). Hodge v. County of Delaware, 2009 WL 3415131 at *4 (S.D. Ind. 2009)(complaint for failure to train fails to state claim where it does not contain any facts regarding the alleged training that was not given or how the alleged lack of training led to

8

constitutional injuries). Thus, Plaintiff's official capacity claims against Defendants Gannon and Nichols will be dismissed.

**C. Individual Liability And Qualified Immunity Under Section 1983**

Defendants Wilder and Walker assert that they are not individually liable to Plaintiff because they are protected by qualified immunity. Qualified immunity is an affirmative defense which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Generally, the qualified immunity inquiry involves first determining whether a constitutional violation occurred, and, if so, a subsequent determination of whether the right infringed was clearly established. McKinley v. City of Mansfield, 404 F.3d 418, 429-30 (6th Cir. 2005). However, while this sequence "is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). Instead, courts should use "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures[.]" U.S. Const. amend. IV. For a search or seizure to be reasonable, it generally must be effectuated pursuant to a warrant based upon probable cause. See, Payton v. New York, 445 U.S. 573, 578 (1980). The Fourth Amendment's prohibition against unreasonable searches "does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), or from a third party who possesses common authority over the premises[.]" Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

9

In this case, Defendants Wilder and Walker assert that Plaintiff consented to a search of her property and point out that under Sixth Circuit law "'even where third-party consent comes from an individual without actual authority over the property searched, there is no Fourth Amendment violation if the police conducted the search in good faith reliance on the third party's apparent authority to authorize the search through her consent.'" (Docket Entry No. 17 at 13 quoting, United States v. Morgan, 435 F.3d 660, 663 (6th Cir. 2006)). However, Defendants' argument presupposes two things which are not established by the Second Amended Complaint. First, Plaintiff does not admit in her Second Amended Complaint that she consented to the search, only that she "allegedly consented to a search of her property." (Second Amended Complaint ¶ 4.7). Second, even if Plaintiff did consent to a search of *her* property, the Court cannot conclude that officers acted in good faith reliance on that consent in searching her ex-husband's property since Plaintiff claims she told Defendant Wilder that she and her husband "divorced in 2002 and that a quitclaim deed was signed" in relation to the two properties which were denoted by separate driveways and mailboxes.

Defendants Wilder and Walker next assert that they cannot be liable for unlawful arrest because, upon finding the marijuana in plain view, they had probable cause to arrest Plaintiff. Again, this argument rests upon factual conclusions which cannot be made upon the present record. Leaving aside whether Plaintiff actually consented or even had the authority to do so, the Court cannot say, as Defendants assert, that the failure to discover the true ownership of the property amounts to nothing more than negligence and that it was "reasonable to believe that the Johnsons were still married and that they owned the properties jointly." (Docket Entry No. 17 at 14). Exactly what the tax records show is unknown because they are not before the Court. Moreover, Plaintiff claims she told Detective Wilder that the properties had been divided by way of a quitclaim deed and presumably that officer would keep that in mind when he reviewed the tax records, particularly in light of the the fact

10

that the properties had separate addresses and driveways.  See, Everson v. Leis, 556 F.3d 484, 499 (6th Cir. 2009)(citation omitted)("In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.").[3]

## D.  TGTLA Claim

Defendants assert that while this Court would ordinarily have supplemental jurisdiction over the Plaintiff's state law claims, it does not have such jurisdiction over the TGTLA claim because T.C.A. § 29-20-307 gives state circuit courts exclusive jurisdiction over such claims.  Defendants therefore request that the TGTLA claim be dismissed and in support of that request rely upon Gregory v. Shelby County, Tenn., 220 F.3d 433, 446 (6th Cir. 2000) and pre-Gregory decisions.

In Lopez v. Metro. Govt. of Nashville, 646 F. Supp. 891, 920 (M.D. Tenn. 2009), this Court was presented with the same argument.  In declining to dismiss the TGTLA claim, this Court noted that in Gregory, the Sixth Circuit held that because T.C.A. § 29-20-307 expresses "a clear preference that TGTLA claims be handled by its own state courts, . . . [t]his unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." Gregory, 260 F.3d at 466.  Nevertheless, this Court in Lopez refused to decline consideration of the TGTLA claim, writing:

> Some courts have woodenly applied Gregory and dismissed supplemental TGTLA claims on the grounds that the only venue for such claims is the state circuit court.  See, Payne v. Tipton County, Tenn., 2006 WL 1967046 at *2 (W.D. Tenn. 2006).  Other courts have read Gregory as allowing, but not requiring, dismissal of TGTLA claims and observe that federal district courts can, and commonly do, hear

---

[3]Almost as an afterthought, Defendants in a one-sentence argument conclusorily assert that they cannot be liable for a Fourth Amendment violation because the rights which Plaintiff asserts were not clearly established so as to put Defendants on notice under Saucier.  Certainly, the need for probable cause to make an arrest, as well as the need for a search warrant absent some valid exception, were both clearly established in June 2008.

11

> TGTLA claims under supplemental jurisdiction. See, Johnson v. City of Memphis, 2006 WL 2546544 at * 2 (W.D. Tenn. 2006).[4]
>
> The district court in Brown v. City of Memphis, 440 F.Supp.2d 868, 878 (W.D. Tenn. 2006) adopted the latter approach. In doing so, the court observed that "[s]upplemental jurisdiction is grounded implicitly in Article III of the Constitution, and, explicitly, in federal statutory law." Id. at 678. Given these underpinnings, state legislatures "are powerless to impose jurisdictional constraints upon the federal judiciary," and, therefore "[w]hatever the intent of the Tennessee legislature may have been in enacting the Governmental Tort Liability Act, the authority of the federal courts to appropriately exercise jurisdiction over supplemental state law matters remains undiminished." Id. The court then went on to hold that dismissal of the TGTLA claims would unnecessarily waste judicial and litigant resources. Id.; see, Johnson, 2006 WL 2546544 at *2 (refusing to remand TGTLA claim because claims arose out of common nucleus of facts and remand "would waste the resources of the state and federal court and the litigants").

Lopez, 646 F.Supp.2d at 646.

The Court again agrees with the rationale in Brown and finds that compelling circumstances do not exist so as to support a remand of the TGTLA claim. This case has been pending since June 15, 2009, and the parties are nearing the end of discovery and the deadline for filing dispositive motions. As in Lopez, "[i]t would be a colossal waste of time and resources for all involved were the Court to remand a claim which arises out of the same facts as the claims which remain pending before this Court." Id. Accordingly, the Court will exercise its discretion by declining to dismiss the TGTLA claim so that it can be pursued in state court.

Defendants argue in the alternative that if the Court decides to entertain the TGTLA claim, the same should be dismissed because they are immune from liability under the Act. The TGTLA

---

[4] In an unpublished opinion dealing with an interlocutory appeal, the Sixth Circuit noted that Gregory could be read as requiring that a district court decline to exercise supplemental jurisdiction over a TGTLA claim given the provisions in T.C.A. § 29-20-307, but that Gregory has also been read as indicating that the Tennessee Code provision "merely factors into, but does not control, a federal district court's discretionary decision whether to exercise supplemental jurisdiction over such claims." Ontha v. Rutherford County, Tennessee, 222 Fed. Appx. 498, 598 (6th Cir. 2007). The Sixth Circuit in Ontha declined to reach the issue.

12

waives the governmental immunity traditionally enjoyed by cities and counties (and their employees) "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment." T.C.A. § 29-20-205. There are, however, certain exceptions, including where "the injury arises out of: . . . (2) . . . false arrest, malicious prosecution, intentional trespass, abuse of process . . . invasion of right of privacy, or civil rights[.]" T.C.A. § 29-20-205(2).

In this case, while Plaintiff characterizes her TGTLA claim as being grounded solely in negligence, the genesis of that claim is her assertion that her civil rights were violated. As such, she cannot maintain a claim under the TGTLA. See, Shelton v. Rutherford County, 2009 WL 2929394 at *12 (M.D. Tenn. 2009)(where "negligence claims are asserted in the context of a civil rights case and are based upon the same actions that gave rise to the civil rights claims . . . the cause of action falls within . . . [the] immunity granted under Tenn.Code Ann. § 39-20-205"); Butler v. City of Englewood, 2008 WL 4006786 *13 (E.D. Tenn.. 2008)("civil rights" include claims arising under federal civil rights law and the United States Constitution and therefore where plaintiff's state law claims "clearly arise out of and directly flow from the allegations that the police officer deprived [plaintiff] of [her] civil rights," defendants are entitled to immunity under the TGTLA); Benson v. Penney, 2007 WL 1655892 at *2 (E.D. Tenn. 2007)(negligence claim which is "rooted in an alleged civil rights violation" is governed by immunity provision of TGTLA).[5] Plaintiff's TGTLA claim will therefore be dismissed.

---

[5]As indicated, Plaintiff's TGTLA claim is purportedly grounded in negligence and the argument she makes in response to Defendant's motion relates solely to her claim that Defendants were negligent. Nevertheless, the Court notes that Plaintiff has filed a separate cause of action for assault and battery, and such a claim is viable notwithstanding the TGTLA. Limbaugh v. Coffee Medical Ctr., 59 S.W.3d 73, 83-84 (Tenn. 2001).

13

**E. Remaining Claims**

Defendants assert that if this Court does not dismiss all of Plaintiff's federal claims and chooses to exercise supplemental jurisdiction over her state-law claims, the Court should nevertheless dismiss Plaintiff's claim under T.C.A. § 8-8-302 and her state common law claims on substantive grounds.

With respect to Plaintiff's claim under T.C.A. § 8-8-302, Defendants argue that this claim should be dismissed because Cannon County is not named as a Defendant in this action. The statute provides:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

T.C.A. § 8-8-302.

Plaintiff concedes that Cannon County is not named as a Defendant, but argues that her claim under T.C.A. § 8-8-302 should proceed because she named Defendants Gannon and Nichols in their official capacities. While suits against Defendants in their official capacity under Section 1983 recognize the legal fiction that an official represents the interests of both himself and the political body that he represents, Plaintiff points to no authority which employs the same legal fiction for claims under T.C.A. § 8-8-302. Since the statute clearly states that Plaintiff may bring a claim against the county for the injury done by a sheriff's deputy, and since Plaintiff has not named Cannon County as a Defendant, her claim under T.C.A. § 8-8-302 will be dismissed.

Finally, Defendants seek dismissal of Plaintiff's state-law claims for assault and battery and trespass to chattels, arguing that Plaintiff consented to a search of her property and that search revealed probable cause for Plaintiff's arrest. However, this Court has already determined that

14

factual questions exist on these issues and accordingly, Plaintiff's claims for assault and battery and trespass to chattels will not be dismissed.

## IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss (Docket Entry No. 16) will be granted in part and denied in part. The Motion to Dismiss will be granted with respect to Plaintiff's federal claims under the Fourteenth Amendment, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Plaintiff's official capacity claims against Defendants Mike Gannon and Billy Nichols. The Motion to Dismiss will also be granted with respect to Plaintiff's state-law claims under the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-201 *et seq.*, T.C.A. § 8-8-302 and with respect to Plaintiff's request for a permanent injunction. The Motion to Dismiss will be denied with respect to Plaintiff's federal claim under 42 U.S.C. § 1983 against Defendants Charlie Wilder and Vance Walker in their individual capacity and with respect to Plaintiff's common law assault and battery and trespass to chattel claims against those two Defendants.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE